

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-26-00056-CV

HARITHA MIKKILINENI, APPELLANT

V.

PENTAVIA CUSTOM HOMES LLC, CURT DUBOSE,
AND SOLEIL DEVELOPMENT, LLC, APPELLEES

On Appeal from the 96th District Court
Tarrant County, Texas[1]
Trial Court No. 096-341756-23, Honorable J. Patrick Gallagher, Presiding

August 12, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant Haritha Mikkilineni appeals from the district court's summary judgment in favor of appellees PentaVia Custom Homes LLC, Curt Dubose, and Soleil Development, LLC. Mikkilineni sued appellees for breach of contract, fraud, fraudulent

---

[1] Originally appealed to the Second Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket-equalization efforts. *See* TEX. GOV'T CODE § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

inducement, and civil conspiracy, alleging appellees agreed but failed to sell her certain real property. The trial court granted summary judgment for appellees. We affirm.

## BACKGROUND

In 2018, PentaVia[2] and Soleil entered an option agreement under which PentaVia marketed and sold residential lots that Soleil acquired in the Granada community in Westlake. Mikkilineni was interested in purchasing property in the community that was listed for sale. On June 21, 2021, Mikkilineni and a representative of PentaVia signed a Lot Deposit Agreement which reads:

LOT DEPOSIT AGREEMENT

Execution Date: _____6|21|21_____, 2021

I, __HARITHA MIKKILINENI__ ("Buyer"), understand that PentaVia Custom Homes, LLC ("Seller"), as a result of this Agreement and deposit, is taking the property located at 2219 Costa Del Sol (Lot 5), Westlake, Texas (the "Property") off the market.

I understand and agree that the deposit of $20,000.00 is to secure the Property listed above, and that this deposit is non-refundable after 30 days. If a contract to purchase the Property is executed prior to 30 days after the Execution Date, the deposit will be applied toward the purchase price of the Property. However, if the Buyer defaults on the purchase agreement or does not close on the Property within 90 days of the execution date of this Agreement, the Seller shall retain the deposit. If the Buyer provides written notice to the Seller, prior to 30 days after the Execution Date, stating they are not going to purchase the Property, the deposit will be returned to Buyer in full.

The purchase price for the Property is $525,000.00.

---

[2] Dubose is an officer of PentaVia.

2

The agreement did not include any attachments or proposed contracts. Mikkilineni paid the $20,000 deposit. Over the next several months, she sent multiple emails to Dubose seeking updates and requesting a closing date, but little information was forthcoming.

Unbeknownst to Mikkilineni, Soleil had conveyed the property by warranty deed to Ambe Hotels FW LLC in June of 2018. Under the sales contract, Ambe's principal, Amit Patel, was required to execute a construction contract with PentaVia within six months after the closing date. After Patel failed to do so, PentaVia informed him that PentaVia was exercising its contractual right to repurchase the property. Soleil and PentaVia filed suit against Patel in August of 2022. The parties reached a settlement agreement in December of 2022 and Patel agreed to convey the property back to Soleil.

In March of 2023, Mikkilineni again contacted Dubose requesting that PentaVia close on the sale of the lot to her. In response, PentaVia offered Mikkilineni the options of either (1) purchasing the property for $900,000 or (2) receiving a refund of her $20,000 deposit, plus an additional $20,000 as compensation. PentaVia informed Mikkilineni that another offer had been made on the property and that she had 24 hours to make her election. Two days later, on April 5, 2023, the other buyers signed an agreement to purchase the property from Soleil for $970,000, but the sale was not completed.

On May 15, 2023, PentaVia told Mikkilineni that it would sell her the lot for $525,000, the price stated in the lot deposit agreement. PentaVia provided Mikkilineni with its standard lot purchase agreement and addenda, which required that the buyer use PentaVia as its builder. Mikkilineni was unwilling to purchase the lot with that requirement.

3

On June 21, 2023, PentaVia notified Mikkilineni that it was terminating the lot deposit agreement and returned her $20,000 deposit.

Mikkilineni filed this lawsuit on April 21, 2023, alleging breach of contract, fraud, fraudulent inducement, fraud by non-disclosure, and civil conspiracy. She also sought injunctive relief and specific performance. In November of 2024, PentaVia and Dubose filed a motion for traditional and no-evidence summary judgment arguing that the lot deposit agreement does not satisfy the statute of frauds and that there is no evidence supporting certain elements of Mikkilineni's tort claims. Soleil also filed a traditional motion for summary judgment asserting that Mikkilineni's fraud and conspiracy claims fail because the agreement is unenforceable under the statute of frauds. PentaVia and Dubose joined Soleil's motion, and Soleil joined theirs. The trial court granted summary judgment for all defendants in December of 2024. In its orders, the court did not specify the ground or grounds upon which it relied. The trial court entered a final judgment incorporating its prior rulings in September of 2025. After Mikkilineni's motion for new trial was overruled by operation of law, she filed this appeal.

## ANALYSIS

Mikkilineni raises two issues on appeal challenging the summary judgment. In her first, she asserts that the lot deposit agreement is an enforceable contract containing all essential terms for the sale of real estate. In her second, she contends that more than a scintilla of evidence supports her tort claims. The summary judgments were granted generally and will be sustained if they can be upheld on any ground asserted in the motions. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

<u>Breach of Contract</u>

PentaVia, Dubose, and Soleil sought summary judgment on Mikkilineni's breach of contract claim on both no-evidence and traditional grounds. We review the propriety of the summary judgment under the no-evidence standard first. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). A no-evidence summary judgment motion is essentially a motion for pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006).

The first element of a breach of contract claim is the existence of a valid contract. *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Once appellees challenged this element in their no-evidence motion for summary judgment, the burden shifted to Mikkilineni to produce evidence raising a genuine issue of fact with respect to whether she had an enforceable contract with PentaVia for the sale of the property. *See* TEX. R. CIV. P. 166a(b)(2)(D); *Mack Trucks*, 206 S.W.3d at 582. Whether an alleged agreement constitutes an enforceable contract is generally a question of law. *Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2004, no pet.). Formation of a contract requires, among other things, an offer, acceptance in strict compliance with the terms of the offer, and a meeting of the minds on the essential terms of the contract. *See, e.g., USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

Moreover, a contract for the sale of real property is unenforceable unless it satisfies the statute of frauds. TEX. BUS. & COM. CODE § 26.01(a), (b)(4). The statute of frauds provides that a contract for the sale of real property is not enforceable unless the promise

5

or agreement is (1) in writing and (2) signed by the person to be charged with the promise or agreement. *Id.* To satisfy the statute of frauds, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 727 (Tex. 2020) (citation omitted). "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016).

The lot deposit agreement set forth above does not satisfy these requirements. Critically missing from the agreement is any offer or promise by PentaVia to convey the property to Mikkilineni. PentaVia only agreed to take the property off the market and to return, retain, or apply the $20,000 deposit, depending on what transpired. The lot deposit agreement does not create a contractual obligation for PentaVia to sell the property to Mikkilineni but instead merely contemplates the possibility of such an agreement, stating, "*If* a contract to purchase the Property is executed . . . ." (emphasis added). The parties could close the transaction or not close it for any reason. A contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound. *Id.* at 237; *see also Overton v. Bengel*, 139 S.W.3d 754, 757 (Tex. App.—Texarkana 2004, no pet.) (purported sales contract insufficient to satisfy statute of frauds where it merely alluded to existence of separate contract but did not give details of its terms); *Baldwin v. New*, 736 S.W.2d 148, 152 (Tex. App.—Dallas 1987, writ denied) ("invitation to enter into negotiations" is not an offer).

6

Mikkilineni failed to produce evidence that the parties formed an enforceable contract for the sale of the property. We conclude that the trial court properly granted summary judgment on Mikkilineni's breach of contract claim and we overrule her first issue.

Fraud, Fraudulent Inducement, Fraud by Nondisclosure, Conspiracy

Mikkilineni's tort claims are premised on allegations that appellees misrepresented or failed to disclose the true owner of the property and appellees' ability to sell it. She asserts that, but for appellees' fraudulent conduct, she would have closed on the property. She claims as damages the "loss of title to the Property for the purchase price of $525,000.00." Appellees' motion for summary judgment argued that Mikkilineni's fraud and conspiracy claims fail as a matter of law because the agreement Mikkilineni seeks to enforce is not binding.

To prevail on a fraud claim, a plaintiff must demonstrate that she justifiably relied upon a false and material misrepresentation to her detriment. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998). "Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Fraud by nondisclosure is another subcategory of fraud in which a party has a duty to disclose and the nondisclosure is misleading as a positive misrepresentation of facts. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Reliance is a

7

necessary element of a fraud claim. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).

Mikkilineni asserts that she relied upon appellees' representations and/or nondisclosures to her detriment when she entered into the lot deposit agreement. By basing her fraud allegations on the alleged promise to convey the property, Mikkilineni is seeking to recover what she would have obtained had appellees performed that promise. "When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The statute of frauds bars a claim when the plaintiff seeks to obtain the benefit of an otherwise unenforceable bargain. *Haase*, 62 S.W.3d at 798; *see also Collins v. McCombs*, 511 S.W.2d 745, 747 (Tex. Civ. App.—1974, writ ref'd n.r.e.) ("Since plaintiff is here seeking to recover what he would have gained had the promise been performed, it is apparent that his action, while cast in language sounding in tort, is an indirect attempt to recover for the breach of the unenforceable promise and is, therefore, barred by the statute of frauds.").

As set forth above, the lot deposit agreement does not bind appellees to sell, or Mikkilineni to buy, the property. "[W]hen a party has not incurred a contractual obligation, it has not been induced to do anything." *Haase*, 62 S.W.3d at 798; *see also Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 152 (Tex. 2015) (claim for fraudulent inducement cannot be sustained when grounded on unenforceable promise). In short, there is no promise upon which she could have relied to her detriment.

Mikkilineni's conspiracy claim derives from her other claims. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding) (civil conspiracy depends on participation in underlying tort). A civil conspiracy requires two or more persons who agree upon an object, a meeting of minds on the object to be accomplished, and one or more overt, unlawful acts committed in furtherance of the conspiracy, which results in damages. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Mikkilineni alleges that the object of appellees' alleged conspiracy was to deprive her of the property by failing to perform the agreement. But because the statute of frauds bars enforcement of the purported agreement, it also bars the claim for conspiracy. *See, e.g., Weakly v. East*, 900 S.W.2d 755, 758–59 (Tex. App.—Corpus Christi 1995, writ denied). Consequently, the trial court properly granted summary judgment on Mikkilineni's tort claims.

## CONCLUSION

We conclude that Mikkilineni's bases for recovery are barred by operation of the statute of frauds. The trial court's judgment is therefore affirmed.

Judy C. Parker
Chief Justice

9